UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| NORINE CRAWFORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. 1:18-cv-31 |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | )  Honorable Robert J. Jonker |
| | ) |
| Defendant. | ) |
| _____ | ) |

# **REPORT AND RECOMMENDATION**

This is a social security action brought under 42 U.S.C. § 405(g), seeking review of the portion of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB) during the period from June 14, 2013, through March 6, 2016.  On May 21, 2014, plaintiff filed her application for DIB benefits. She claimed a June 14, 2013, onset of disability.[1] (ECF No. 6-5, PageID.245).  Plaintiff's claim was denied on initial review.  (ECF No. 6-4, PageID.171-74).  On August 1, 2016, plaintiff received a hearing before the ALJ.  (ECF No. 6-2, PageID.71-128).  On November 23, 2016, the ALJ issued his decision finding that plaintiff was not disabled from June 14, 2013, through March 6, 2016,

---

[1] The denial of plaintiff's earlier claim for DIB and supplemental security income (SSI) benefits precluded an alleged onset of disability date before June 14, 2013. (ECF No. 6-3, PageID.133-41).

but was disabled on and after March 7, 2016.² (Op., ECF No. 6-2, PageID.48-62). On November 7, 2017, the Appeals Council denied review (ECF No. 6-2, PageID.34-36), rendering the ALJ's decision the Commissioner's final decision.

Plaintiff timely filed a complaint seeking judicial review of the unfavorable portion of the Commissioner's decision. Plaintiff argues that the Commissioner's decision should be overturned on the following grounds:

> I.  The ALJ failed to properly weigh the medical opinion evidence and failed to properly determine plaintiff's residual functional capacity.
>
> II. The ALJ failed to properly evaluate plaintiff's testimony.

(Plf. Brief, 1, ECF No. 10, PageID.823). For the reasons set forth herein, I recommend that the Court affirm the Commissioner's decision.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve

---

² The ALJ found that plaintiff was disabled as of the date her age classification changed from a younger individual to an individual closely approaching advanced age. (Op., 15, ECF No. 6-2, PageID.62).

conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73; *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion.").

## The ALJ's Decision

The ALJ found that plaintiff met the disability insured requirements of the Social Security Act through December 31, 2020. (Op. at 4, ECF No. 6-2, PageID.51). Plaintiff had not engaged in substantial gainful activity on or after June 14, 2013, the alleged onset date. (*Id.*). Plaintiff had the following severe impairments: "bilateral knee degenerative joint disease/osteoarthritis/patellofemoral arthritis; asthma; bilateral shoulder impingement; degenerative disc disease of the cervical spine/spondylosis with disc bulge at C5-C6; and osteoarthritis at multiple sites." (*Id.*). Plaintiff did not have an impairment or combination of impairments that met or equaled a listing impairment. (*Id.* at 6, PageID.53). The ALJ found that plaintiff

retained the residual functional capacity (RFC) for a range of sedentary work with the following exceptions:

> She can occasionally climb ramps and stairs, and balance, she can do no operation of leg or foot controls, bilaterally, and she can do no overhead reaching bilaterally. She can do no kneeling or crawling, and no climbing of ladders, ropes, or scaffolds. She can have occasional exposure to extremes of heat, cold and humidity and is limited to having only occasional exposure to fumes, odors, dusts and gasses. She can have occasional exposure to hazards, including unprotected heights and dangerous moving machinery. She can do no more than frequent bilateral grasping. And she can do no rotation of the head/neck greater than 80 degrees in either direction from a forward-looking position.

(*Id.* at 7, PageID.54).

The ALJ found that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence of record. (*Id.* at 10, PageID.57). Plaintiff could not perform any past relevant work. (*Id.* at 13, PageID.60).

The ALJ considered the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age with her RFC, education, and work experience, the VE testified that there were approximately 313,000 jobs in the national economy that the hypothetical person would be capable of performing. (ECF No. 6-2, PageID.120-22). The ALJ found that this constituted a significant number of jobs and found that plaintiff was not disabled from June 14, 2013, through March 6, 2016. (Op. at 14-15, PageID.61-62).

The ALJ also found that plaintiff was disabled beginning March 7, 2016, the date of her fiftieth birthday. (*Id.* at 15, PageID.62). The basis for that decision was plaintiff's change in age category and the application of Medical-Vocational Rule

201.14.  (*Id.*).

## Discussion

### 1.

Plaintiff argues that the ALJ failed to properly weigh the medical opinion evidence and failed to properly determine her RFC.  Specifically, she argues that the ALJ failed to give appropriate weight to the opinions of Charles Ellsworth, D.O., and Ali Karrar, M.D., under the treating physician rule, and that the ALJ's RFC finding was based on his own lay interpretation of the medical data.  (Plf. Brief, 13-19, ECF No. 10, PageID.834-40).

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference.  *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011).  "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician.  Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent ... with the other substantial evidence in the case record.' " *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)).  A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2); *see Gayheart*, 710 F.3d at 376.

"[T]he ALJ is not bound by conclusory statements of doctors, particularly

where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d at 773 (citation and quotation omitted). An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990*); see also Kepke v. Commissioner*, 636 F. App'x 625, 629 (6th Cir. 2016) ("[A] a doctor cannot simply report what his patient says and re-package it as an opinion."); *Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight, it should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p[3] (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 404.1527(c); *see also Perry v. Commissioner*, 734 F. App'x 335, 339 (6th Cir. 2018) ("This does not require an 'exhaustive, step-by-step analysis[.]'") (quoting *Biestek v. Commissioner*, 880 F.3d

---

[3] On March 27, 2017, the Administration rescinded SSR 96-2p "for claims filed on or after" that date. Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15263-01 (Mar. 27, 2017) (reprinted at 2017 WL 1105348). The Administration noted the ruling was inconsistent with new rules that "state that all medical sources, not just acceptable medical sources, can make evidence that we categorize and consider as medical opinions." *Id.*; *see Hancock v. Commissioner*, No. 1:16-cv-1105, 2017 WL 2838237, at *7 n.2 (W.D. Mich. July 3, 2017) ("Those new rules, however, apply only to claims filed on or after March 27, 2017.").

778, 785 (6th Cir. 2017)).

Moreover, the Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007*); see Gayheart*, 710 F.3d at 376. The reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reasons for that weight." SSR 96-2p, 1996 WL 374188 at *5; *see Gayheart*, 710 F.3d at 376. This procedural requirement exists, in part, so that claimants "understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith v. Commissioner*, 482 F.3d at 876; *see also Gayheart*, 710 F.3d at 376 ("This procedural requirement ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." (citation and quotation omitted).

    A. Dr. Ellsworth

On April 15, 2014, Dr. Ellsworth completed a "Multiple Impairment Questionnaire." (ECF No. 6-8, PageID.422-29). He listed diagnoses of right ankle instability, anemia, gout, pes planus (flat feet), polyarthropy, asthma, degenerative joint disease of the bilateral knees, osteoarthritis of multiple sites and right shoulder impingement. (*Id.* at PageID.442). He offered opinions that plaintiff could sit for "0-1" hours and stand or walk "0-1" hours in an eight-hour workday. (*Id.* at PageID.424).

Plaintiff could not sit continuously and she would need to get up and move around every thirty minutes. Plaintiff could not lift or carry any weight. (*Id.* at PageID.424-25). She was markedly (essentially precluded) from use of her hands for grasping, turning, or twisting objects, using her hands for fine manipulations, and reaching bilaterally. (*Id.* at PageID.425-26). Plaintiff's symptoms would constantly interfere with attention and concentration. Plaintiff "should not work at all," but she was capable of performing low stress work. (*Id.* at PageID.427). Plaintiff would have "all bad days" and needed to avoid wetness, fumes, gasses, temperature extremes, humidity, dust, and heights. She could not perform pushing, pulling, kneeling, bending, or stooping. (*Id.* at PageID.428).

On June 2, 2015, Lisa Guyot, M.D., examined plaintiff on a referral from Dr. Ellsworth. (ECF No. 6-10, PageID.596-98). Dr. Guyot found that plaintiff was able to ambulate without difficulty. She retained a "[f]ull range of motion of the lumbar, cervical shoulders and hips." (*Id.* at PageID.597). Plaintiff's straight leg raising test was negative and her strength was 5/5 bilaterally. She "had no pain to any spinous muscles." (*Id.*). Dr. Guyot recommended physical therapy and epidural injections. Plaintiff was not a candidate for surgical intervention. (*Id.* at PageID.598-99).

The ALJ found that the opinions Dr. Ellsworth expressed in his Multiple Impairment Questionnaire responses were entitled to little weight. (Op., 11-12, ECF No. 6-2, PageID.58-59). The ALJ found that the proffered restriction regarding alternating between sitting and standing every thirty minutes "was internally inconsistent with the overall conclusion that [plaintiff] could not stand or walk for

more than 1 hour in an eight-hour workday." (*Id.* at 11, PageID.58).  The significant limitations "were also inconsistent with the record as a whole, and with Dr. Ellsworth's own treatment notes." (*Id.* at 11-12, PageID.58-59). Although he opined very significant limitations, "Dr. Ellsworth's treatment notes showed that he often did not conduct musculskeletal examinations during physical examinations, even when the corresponding diagnosis related to the [plaintiff's] knee or shoulder impairments." (*Id.* at 12, PageID.59).

I find no error in the ALJ's consideration of the opinions Dr. Ellsworth provided in his Multiple Impairment Questionnaire responses or in the ALJ's determination that they were entitled to little weight.  The functional restrictions that Dr. Ellsworth suggested were inconsistent with his treatment notes.  Such inconsistency is an appropriate consideration.  *See Moruzzi v. Commissioner*, No. 18-3320, __ F. App'x __, 2018 WL 6721346, at *3-4 (6th Cir. Dec. 21, 2018); *Mueller v. Commissioner*, 638 F. App'x 365, 366 (6th Cir. 2017).  Although Dr. Ellsworth advised plaintiff to avoid activities that "caused or worsen[ed]" her knee, foot, or ankle pain (ECF No. 6-9, PageID.512, 515, 519, 528, 531, 537, 540), his treatment records do not reflect the level of functional restriction that he suggested in his questionnaire responses.

On February 5, 2016, Dr. Ellsworth completed a "Disability Impairment Questionnaire." (ECF No. 6-11, PageID.660-64).  He offered opinions that plaintiff could not work.  She could never lift or carry any amount of weight.  Plaintiff would frequently experience symptoms severe enough to interfere with her attention and concentration.  She would be absent from work more than three days per month. (*Id.*

at PageID.662-64).

The ALJ found that the opinions Dr. Ellsworth expressed in his Disability Impairment Questionnaire responses were entitled to little weight. (Op., 12, PageID.59). Dr. Ellsworth's opinion regarding how many days of work plaintiff would miss was "speculative." (*Id.*). His opinion that plaintiff "should not work at all was an opinion on an issue reserved to the Commissioner and involved vocational considerations for which Dr. Ellsworth is not an expert." (*Id.*).

The ALJ's gave good reasons for rejecting the restrictions that Dr. Ellsworth suggested in his questionnaire responses. Dr. Ellsworth's opinion that plaintiff was "incapable of working" was entitled to no weight because disability is an issue reserved to the Commissioner. *See Cosma v. Commissioner*, 652 F. App'x 310, 311 (6th Cir. 2016) (*per curiam*); *see also* 20 C.F.R. § 404.1527(d). His statement of "how often plaintiff would likely miss work was conjecture, not a medical opinion." *Ellis v. Commissioner*, No. 1:15-cv-726, 2016 WL 3735776, at *4 (W.D. Mich. July 13, 2016). I find no violation of the treating physician rule.

B. Dr. Karrar

On July 14, 2014, Dr. Karrar completed a portion of an "Arthritis Impairment Questionnaire" and listed diagnoses of fibromyalgia, inflammatory polyarthropy, osteoarthritis and bursitis.[4]  (ECF No. 6-8, PageID.485-92).  He did not provide

---

[4] Dr. Karrar did not answer questions asking him to identify the clinical findings that supported his diagnosis, whether plaintiff's synovial fluid had been analyzed, whether plaintiff's arthritis was part of a systemic disease, whether plaintiff's symptoms were severe enough to interfere with attention and concentration, whether plaintiff's impairments were expected to last at least twelve months, whether

explanations regarding how the proffered limitations in his questionnaire were related to arthritis or any other diagnosis. Dr. Karrar indicated that plaintiff was able to ambulate effectively and independently carry out activities of daily living. (*Id.* at PageID.487-88). Dr. Karrar offered his opinion that plaintiff could sit "0-1" hours and stand or walk "0-1" hours in an eight-hour workday. (*Id.* at PageID.488). Plaintiff would need to avoid continuously, sitting, standing, or walking, and how frequently she needed to get up and move around would depend on her degree of activity. (*Id.*). Plaintiff could occasionally lift and carry up to five pounds. Plaintiff would sometimes need to take unscheduled breaks. (*Id.* at PageID.489-91).

The ALJ found that Dr. Karrar's opinions were entitled to little weight because the restrictions he suggested were inconsistent with the other significant evidence in the record. The ALJ found that the exercise and weight management that Dr. Karrar consistently recommended were inconsistent with the level of functional restriction that he suggested in his questionnaire responses. Dr. Karrar's consistent description of plaintiff's gait as normal was inconsistent with the significant RFC restrictions he endorsed. (Op., 13, PageID.60).

Plaintiff argues that the ALJ should have given Dr. Karrar's opinions controlling weight. (Plf. Brief, 16, PageID.838). I find no error because ALJs are not bound by conclusory statements of doctors where they appear on "check-box forms"

---

emotional factors contributed to the severity of plaintiff's symptoms, whether plaintiff could tolerate low stress work, whether plaintiff had other limitations affecting her ability to work, and to identify the earliest date that his description of plaintiff's symptoms and limitations applied. (ECF No. 6-8, PageID.485-92).

and are unsupported by explanations citing detailed objective criteria and documentation. *See Buxton*, 246 F.3d at 773; *see also Ellars v. Commissioner*, 647 F. App'x 563, 566-67 (6th Cir. 2016) (ALJs "properly [give] a check-box form little weight where the physician provide[s] no explanation for the restrictions entered on the form and cite[s] no supporting medical evidence."). " 'Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.' " *Bayes v. Berryhill*, No. 3:16-cv-2822, 2018 WL 791323, at *2 (N.D. Ohio Feb. 8, 2018) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)); *see Ashley v. Commissioner*, No. 1:12-cv-1287, 2014 WL 1052357, at *8 n.6 (W.D. Mich. Mar. 19, 2014) ("Courts have increasingly questioned the evidentiary value of 'multiple choice' or 'check-off' opinion forms by treating physicians[.]"); *see also Nicholas v. Berryhill*, No. 16-14072, 2018 WL 2181463, at *3 (E.D. Mich. Jan. 25, 2018) ("Courts in this circuit have held that a medical source statement in 'check-the-box' format, by itself, provides little to no persuasive value — to hold otherwise would neglect its glaring lack of narrative analysis.") (citation and quotation omitted).

Plaintiff argues the ALJ should have given greater weight to Dr. Karrar's opinions because Dr. Karrar was a treating rheumatologist and he diagnosed and treated plaintiff's fibromyalgia.[5] Plaintiff further argues that, because exercise is

---

[5] "[A] diagnosis of fibromyalgia does not equate to a finding of disability or an entitlement to disability benefits." *Stankoski v. Commissioner*, 532 F. App'x 614, 619 (6th Cir. 2013) (citing *Vance v. Commissioner*, 260 F. App'x 801, 806 (6th Cir. 2008)); *Masters v. Commissioner*, 707 F. App'x 374, (6th Cir. 2017) ("A finding that a claimant suffers from fibromyalgia is not alone sufficient to support a disability claim.").

part of the normal course of treatment for fibromyalgia, the ALJ gave too much weight to exercise recommendations in discounting Dr. Karrar's opinions. (Plf. Brief at 13-18, PageID.835-40).

Dr. Karrar's progress notes indicate that he saw plaintiff on four occasions: August 21 and September 17, 2013, and April 18 and July 7, 2014.[6] On each occasion, Dr. Karrar noted that plaintiff was not in acute distress and that her gait was normal. (ECF No. 6-8, PageID.452, 456, 460-61, 464). The first item that Dr. Karrar listed in the treatment plan at the conclusion of every visit was an instruction advising plaintiff to increase her exercise and activity levels. (*Id.* at 454, 457, 461-62, 466). I find that the ALJ gave good reasons for giving little weight to Dr. Karrar's opinions. The "very significant limitations" that Dr. Karrar suggested in his questionnaire responses were inconsistent with his treatment notes and Dr. Guyot's findings. (Op. 13, PageID.60). I find no violation of the treating physician rule.

C. <u>RFC</u>

Plaintiff argues that the ALJ's RFC finding should be rejected as his own "lay interpretation" of the medical data. (Plf. Brief, 17-18, ECF No. 10, PageID.839-40). An argument that "the ALJ's RFC lacks substantial evidence because no physician

---

" 'Some people may have a severe case of fibromyalgia as to be totally disabled from working ... but most do not and the question is whether [the claimant] is one of the minority.' " *Vance,* 260 F. App'x at 806 (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996)).

[6] The ALJ noted plaintiff's testimony that "she had not had any recent examinations for her fibromyalgia, or concerning tender point examinations." (Op. 5-6, ECF No. 6-2, PageID.52-53). Plaintiff has not challenged the ALJ's finding that under SSR 12-2p, plaintiff's "fibromyalgia cannot be deemed a medically determinable impairment based upon this record." (*Id.*).

opined that [plaintiff] was capable of [such] work" does not provide a basis for disturbing the Commissioner's decision. *Shepard v. Commissioner*, 705 F. App'x 435, 442-43 (6th Cir. 2017); *see also Mokbel-Aljahmi v Commissioner*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have [] rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ."). "The ALJ is charged with the responsibility of determining the RFC based on h[is] evaluation of the medical and non-medical evidence." *Rudd v. Commissioner*, 531 F. App'x. 719, 728 (6th Cir. 2013). " '[T]o require the ALJ to base h[is] RFC on a physician's opinion, would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability.' " *Shepard*, 705 F. App'x at 442-43 (quoting *Rudd*, 531 F. App'x at 728). The ALJ did not improperly substitute his "own medical judgment" for that of any medical expert or interpret raw medical data beyond his ability by making a RFC determination. *See Rudd*, 531 F. App'x. at 726-27.

**2.**

Plaintiff's second claim of error is that the ALJ failed to properly evaluate her testimony. Plaintiff argues that the ALJ's analysis of her testimony was too brief and that the ALJ erred by finding that her testimony was not supported by her conservative treatment. (Plf. Brief, 18-20, ECF No. 10, PageID.840-42). Plaintiff has not shown a lack of substantial evidence supporting the ALJ's finding regarding her subjective symptoms.

An ALJ's factual findings concerning a claimant's subjective symptoms are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The Court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). The Court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed[.]" *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's findings are reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." *Ulman v. Commissioner*, 693 F.3d at 714. Claimants challenging the ALJ's findings "face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). The Court must accord the ALJ's findings "great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones v. Commissioner*, 336 F.3d 469, 476 (6th Cir. 2003); *see Buxton*, 246 F.3d at 773.

The Sixth Circuit recognizes that meaningful appellate review requires more than a blanket assertion by an ALJ that "the claimant is not believable." *Rogers v. Commissioner*, 486 F.3d 234, 248 (6th Cir. 2007). The *Rogers* court observed that the ALJ must explain his credibility determination and that the explanation " 'must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for

that weight.' "7   *Id.* (quoting *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Assessing Disability Claims: Assessing the Credibility of an Individual's Statements, SSR 96-7p* (reprinted at 1996 WL 374186, at *4 (SSA July 2, 1996)).

The ALJ gave a lengthy and detailed explanation of his factual findings regarding plaintiff's symptoms and his findings are supported by substantial evidence. (Op., 9-10, ECF No. 6-2, PageID.56-57). The ALJ found that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were inconsistent with the objective findings and imaging results. (*Id.* at 10, PageID.57). Further, plaintiff's statements concerning her symptoms were not entirely consistent with her history of conservative treatment. (*Id.*).

Plaintiff argues that the Commissioner's decision should be overturned because steroid injections are not "conservative" treatment. (Plf. Brief, 20, ECF No. 10, PageID.842). This issue has been addressed by the Court in another case. "The ALJ did not err in characterizing [injection] treatment as conservative." *Wright-*

---

[7] SSR 16-3p applies to administrative decisions made on or after March 28, 2016. *See Social Security Ruling 16-3p Titles II and XVI: Evaluation of Symptoms in Disability Claims* (reprinted at 2017 WL 5180304, at *1, 13 n.27 (SSA Oct. 25, 2017)). It applies here because the ALJ entered his decision on November 23, 2016. In SSR 16-3p, the Administration "eliminate[ed] the term credibility from [its] sub-regulatory policy, as [its] regulations do not use the term. In so doing, [the Administration] clarify[ied] that subjective symptom evaluation is not an examination of the individual's character." *Id.* at 1; *see Dooley v. Commissioner*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016). Although SSR 16-3p superseded SSR 96-7p, little has changed. *See Scobey v. Commissioner*, No. 1:17-cv-987, 2018 WL 4658816, at *11 n.3 (W.D. Mich. Sept. 28, 2018) ("[A]side from this linguistic clarification, the analysis under SSR 16-3p otherwise is identical to that performed under SSR 96-7p.") (citation and quotation omitted).

*Wenger v. Commissioner*, No. 1:15-cv-753, 2016 WL 3922158, at *6 (W.D. Mich. July 21, 2016).

### Recommended Disposition

For the reasons set forth herein, I recommend that the Court affirm the Commissioner's decision.

Dated: January 24, 2019    /s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge

### NOTICE TO PARTIES

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).